UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JONATHAN SHELTON,                          )
                                           )
          Movant,                          )
                                           )
vs.                                        )          Civ. No. 2:20-cv-02704-JTF-atc
                                           )          Cr. No. 2:18-cr-00256-JTF-2
                                           )
UNITED STATES OF AMERICA,                  )
                                           )
          Respondent.                      )

---

**ORDER DENYING MOTION FOR COUNSEL TO PRODUCE CASE FILE (ECF NO. 19);
GRANTING MOTION FOR EXTENSION OF TIME TO FILE A REPLY (ECF NO. 20);
DENYING AMENDED MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
CORRECT SENTENCE (ECF NO. 11);
DENYING A CERTIFICATE OF APPEALABILITY;
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH; AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

---

On September 14, 2020, Jonathan Shelton ("Movant"), who is presently confined at the

United States Penitentiary in Yazoo City, Mississippi ("USP-Yazoo City")[1] and is assigned

Federal Bureau of Prisons prisoner number 25830-075, filed a *pro se* Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence in the Western Division of this District.  (ECF No.

1 ("§ 2255 Motion").)   On September 22, 2020, the Court ordered Movant to file an amended

motion on the official form published by the Administrative Office of the United States Courts.

(ECF No. 4.)  On March 19, 2021, Movant filed an Amended Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence.  (ECF No. 11 ("Amended § 2255 Motion").)  On July 14,

2022, the Court directed Respondent United States of America ("Government") to respond to the

---

[1] *See* https://www.bop.gov/inmateloc/ (Federal Bureau of Prisons website) (last accessed
Oct. 13, 2023).

Amended § 2255 Motion.  (ECF No. 13.)  On September 12, 2022, the Government filed an answer to the Amended § 2255 Motion.  (ECF No. 16 ("Answer").)  On October 19, 2022, the Court granted Movant's motion for extension of time to file a response to the Answer (ECF No. 17).  (ECF Nos. 17 & 18 (setting November 7, 2022 as the deadline for Movant's reply to the Answer ("Reply Deadline")).)

On November 16, 2022, Movant filed a motion for his trial counsel to produce her case file.  (ECF No. 19 ("Motion For Case File").)  On November 18, 2022, Movant filed: (1) another motion for extension of time to file a reply to the Answer (ECF No. 20 ("Second Motion For Extension")); and (2) a reply to the Answer (ECF No. 21 ("Reply")).

The Amended § 2255 Motion (ECF No. 11), the Motion For Case File (ECF No. 19), and the Second Motion For Extension (ECF No. 20) are before the Court.

For the reasons explained below: (1) the § 2255 Motion lacks merit and is **DENIED**; (2) the Motion For Case File (ECF No. 19) is **DENIED**; and (3) the Second Motion For Extension (ECF No. 20) is **GRANTED**, and the Reply (ECF No. 21) is deemed timely filed.

## I.  <u>BACKGROUND</u>

On April 23, 2017 ("Offense Date"), Movant, who was then a convicted felon, attended a Memphis-area gun show with friends and Movant's mother, Tammy Fox.  *See United States of America v. Shelton*, 817 F. App'x 217, 218 (6th Cir. 2020).  While there, Movant caused a disturbance and was ejected from the premises.  Shelby County Sheriff's Office ("SCSO") Detective Jarrett Parks, who was assigned to work the gun show event, saw Movant hand cash to Fox who reentered the gun show.  Soon thereafter, Movant got into a car ("Vehicle") with Fox as she carried a firearm purchased at the gun show.  *Id.*; *see also United States of America v. Shelton, et al.*, Case No. 2:18-cr-20056 (W.D. Tenn.) (ECF No. 180 at PageID 678-79 (transcript from May 29, 2019 hearing)).  To Detective Parks, the Vehicle's windows seemed darker than Tennessee

law permitted. *Shelton*, 817 F. App'x at 218 (citing Tenn. Code Ann. § 55-9-107(a)(1), which prohibits Tennessee drivers from operating "any motor vehicle in which any window ... [h]as a visible light transmittance of less than thirty-five percent (35%)"). Parks told Memphis Police Department ("MPD") Detective Mario Tate about the situation, and Tate located the Vehicle on a nearby highway. *Id*. Tate, who had over ten years of experience enforcing window-tint violations, agreed with Parks that the Vehicle's windows appeared illegally tinted. *Id*. Tate pulled over the Vehicle ("Traffic Stop"), performed a roadside "field comparison test with a digital tint meter," and discovered that the driver's-side window had a visible light transmittance of only 21%, which was below the legal limit. *Id*. While performing the field comparison test, Tate spotted "a weapon in the back floorboard and ... noticed the smell of marijuana," which provided him probable cause to search the Vehicle further. *Id*. That search revealed more guns as well as drugs. *Id*.

On February 22, 2018, a federal grand jury returned an indictment against Movant, charging him with one count of possessing firearms (a Spikes Tactical multi-caliber pistol and a Ruger .357 caliber revolver) as a convicted felon in violation of 18 U.S.C. § 922(g)(1). (*See* Cr. No. 18-cr-20056, Count 3, ECF No. 1 at PageID 2 ("Indictment").) On December 4, 2018, Movant was arrested, and Ruchee J. Patel, Esquire was appointed to serve as Movant's counsel. (Cr. No. 18-cr-20056, ECF Nos. 68 & 69.) On December 14, 2018, Movant entered a plea of not guilty on all counts of the Indictment ("Initial Plea"). (Cr. No. 18-cr-20056, ECF No. 77.) On February 8, 2019, Patel, at Movant's request, filed a motion to suppress "all evidence obtained by the Government as a result of the [Traffic] [S]top" ("Traffic Stop Evidence"). (Cr. No. 18-cr-20056, ECF No. 98 ("Motion To Suppress") at PageID 390; *see also* ECF No. 16-1 at PageID 63 (Patel's affidavit that "Shelton requested a motion to suppress evidence to be filed").) In the Motion To Suppress, Patel argued that the Traffic Stop violated the Fourth Amendment because "[n]o reasonable person" could have believed that the Vehicle's windows were illegally tinted. (Cr. No.

18-cr-20056, ECF No. 98 at PageID 394 (contending that "[o]fficers lacked specific and articulable facts upon which to base reasonable belief that the [V]ehicle had window tint to be below legal limit for light transmission").)  The Government opposed the Motion To Suppress.  (Cr. No. 18-cr-20056, ECF No. 102.)

During an evidentiary hearing on March 28, 2019 ("Suppression Hearing") (*see* Cr. No. 18-cr-20056, ECF No. 117), the Government called Parks and Tate as witnesses and introduced one exhibit: a photograph of the Vehicle's backseat.  *United States of America v. Shelton*, Case No. 18-20056, 2019 WL 3417369, at *1 (W.D. Tenn. Apr. 1, 2019).  (*See also* Cr. No. 18-cr-20056, ECF No. 118 (Government's Exhibit And Witness List).)  Patel did not call witnesses, introduce exhibits, or cross-examine Parks or Tate.  *Shelton*, 817 F. App'x at 218.  Finding Parks and Tate credible, the Magistrate Judge issued a Report And Recommendation ("R&R") denying the Motion To Suppress.  *Shelton*, 2019 WL 3417369, at *2.  After Movant filed timely objections, the undersigned District Judge denied Movant's objections, adopted the R&R, denied the Motion To Suppress.  *United States v. Shelton*, No. 2:18-cv-20056, 2019 WL 2563821, at *1 (W.D. Tenn. June 21, 2019).

At a change of plea hearing before the Court on May 29, 2019, Movant (1) changed his plea from not guilty to guilty on Count 3 of the indictment ("Changed Plea") and (2) preserved his right to appeal the denial of the Motion To Suppress.  (Cr. No. 18-cr-20056, ECF No. 133; *see* ECF No. 180 at PageID 673-78, 684, 688-90, 694, 697-700 ("Plea Change Hearing"); *see also* ECF No. 134 at PageID 484-77 ("Plea Agreement").)  *See Shelton*, 817 F. App'x at 218-19.  The Court explained to Movant that, *inter alia*, the probation office was going to prepare a presentence report about Movant's background to aid the Court in reaching a decision about Movant's sentence.  (Cr. No. 18-cr-20056, ECF No. 180 at PageID 695-96.)  In the Plea Agreement, Movant was advised that the offense charged in Count 3 of the Indictment "carries a maximum statutory

4

punishment of imprisonment for not more than ten (10) years." (Cr. No. 18-cr-10056, ECF No. 134 at PageID 484.) In exchange for Movant's plea, the Government agreed to recommend, *inter alia*: that Movant receive a 2-level decrease to the offense level for acceptance of responsibility; that Movant be sentenced within the advisory guideline range as determined by the Court; and that Movant be placed on supervised release following his imprisonment. (*Id*. at PageID 485.)

On September 2, 2019, Patel filed Objections And Position Of Defendant With Respect To Sentencing Factors. (Cr. No. 18-cr-20056, ECF No. 151 at PageID 535-40 ("Sentencing Factor Objections").) Movant objected to the base offense level, asserting that he did not have a prior conviction for a controlled substance offense following *United States v. Havis*, 927 F. 3d 382 (6th Cir. 2019). (*Id*. at PageID 535-36.) Movant also objected to: (1) the gun count enhancement, arguing that the offense involved only two guns; and (2) the stolen gun enhancement. (*Id*. at PageID 536.) Movant objected to the criminal history points assigned to certain prior convictions. (*Id*.) The Presentence Investigation Report ("PSR"), filed on September 6, 2019, determined that Movant had a total offense level of 24, based on a base offense level of 22 due to a prior 2011 conviction for a controlled substance offense, a two-point increase for possession of three firearms, a two-point increase because one of the firearms was stolen, and two-point reduction for acceptance of responsibility. (*See* Cr. No. 18-cr-20056, PSR ¶¶ 18,-20, 26-27, ECF No. 154 at PageID 553.) The guideline range was calculated at 100 to 120 months. (*Id.*, *see* PSR ¶ 90, at PageID 568.)

The Court held sentencing hearings on November 7, 2019 ("November 7 Hearing") and November 13, 2019 ("November 13 Hearing").

At the November 7 Hearing, the Government told the Court that the parties had a proposed stipulation regarding the fourth element of the Government's claim against Movant under 18 U.S.C. § 922(g)(1) ("Draft Stipulation"), which included Movant's stipulation that he knew, on

the Offense Date, that he had previously been convicted of a crime punishable by an imprisonment term exceeding one year ("Proposed *Rehaif* Waiver").  (Cr. No. 18-cr-20056, ECF No. 180-1 at PageID 711.)  The Court continued the November 7 Hearing to November 13, in order that: (1) counsel for the parties could work out a typewritten revised stipulation (*see* ECF No. 180-1 at PageID 714-15); and (2) Patel could discuss the Draft Stipulation with Movant, to allow the Court to "hear from Mr. Shelton [at the November 13 Hearing] that his decision is knowing, voluntary and he understands the stipulation and desires to move forward with the stipulation being put in place" (*id*. at PageID 712-16).

At the November 13 Hearing, the Government sought an additional four-point enhancement under § 2K2.1(b)(6)(B) because Movant possessed the guns in connection with two separate felonies.  (Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 730-31.)  The Court ruled that Movant had possessed the gun with respect to only one other felony: aiding and abetting Fox in obtaining the gun illegally for Movant.  (*Id*. at PageID 736.)  The Court granted Movant's objections regarding the number of guns involved and the stolen gun.  (*Id*. at PageID 743-44.)  The Court denied Movant's objection under *Havis*, which had held that the definition of "controlled substance offense" in the United States Sentencing Guidelines ("USSG") did not include attempt crimes.  The Court concluded that Movant's 2011 conviction for unlawful possession of a controlled substance with intent to sell was a controlled substance offense.  (*Id*. at PageID 745-46.)  The total offense level was twenty-four and Movant's criminal history category was IV, which yielded a sentencing range of one hundred to one hundred and twenty-five months.  (*Id*. at PageID 753.)  The statutory maximum for the offense is ten years.  *See* 18 U.S.C. § 922(g)(1).  Under 18 U.S.C. § 922(g), the Court sentenced Movant as a felon in possession of a firearm to a prison sentence of one hundred months.  (*See* Cr. No. 18-cr-20056, ECF Nos. 159, 162, 165 & 166.)

Movant filed an appeal, raising only one issue: whether, to establish reasonable suspicion for the Vehicle Stop, the Government had to introduce evidence other than just Tate's testimony about the Vehicle's window tint. *See Shelton*, 817 F. App'x at 219. (*See also* Cr. No. 18-cr-20056, ECF Nos. 167 & 170.) On July 14, 2020, the United States Court of Appeals for the Sixth Circuit affirmed the District Court's denial of the Motion To Suppress. *Shelton*, 817 F. App'x at 219. (*See also* Cr. No. 18-cr-20056, ECF No. 200.) Movant did not file a petition for a writ of certiorari from the United States Supreme Court.

## II.    **MOTIONS**

### A. **Motion For Case File**

Movant's Motion For Case File seeks: (1) an order compelling Patel to "turn over [counsel's] entire case file so that [Movant] may examine transcripts from his March 28, 2019 suppression hearing"; (2) "discovery"; (3) "police report"; (4) "traffic ticket"; (5) "sentencing transcripts"; (6) "reports"; (7) "photographs"; and (8) "statements" (items (2) – (8) referred to as "Discovery Requests"). (ECF No. 19 at PageID 71.)

#### 1.   **Movant's Request For Patel's Case File**

Movant offers no argument and cites no authority for the proposition that a federal District Court has the authority to compel the production of a case file where a prisoner only makes a general request for his former counsel's case file. The Motion appears to be nothing more than a fishing expedition into Patel's file to see what he could find. The Court sees nothing in the record warranting that relief.

#### 2.   **Movant's Discovery Requests**

Movant's Discovery Requests are vague, broad, one-word categories. (*See* ECF No. 19 at PageID 71.)

Discovery in a § 2255 case may be authorized upon a showing of good cause.  *See* Rules Governing Section 2255 Proceedings For the United States District Courts ("§ 2255 Rules"), Rule 6(a).  Good cause is shown "where specific allegations show reason to believe that the movant may, if the facts are fully developed, be able to demonstrate entitlement to relief."  *Poulsen v. United States of America*, 717 F. App'x 509, 518 (6th Cir. 2017) (quoting *Cornell v. United States*, 472 F. App'x 352, 354 (6th Cir. 2012)), *cert. denied*, 138 S. Ct. 1450 (2018).  "Rule 6's 'good cause' standard requires petitioner to at least attempt to identify what he expects to uncover through his discovery requests."  *Braden v. Bagley*, No. 2:04-CV-842, 2007 WL 1026454, at *2 (S.D. Ohio Mar. 30, 2007).  Rule 6(a) "does not permit a fishing expedition masquerading as discovery."  *Wills v. United States*, Nos. 2:18-CV-020, 2:16-CR-055, 2020 WL 1963509, at *4 (E.D. Tenn. Apr. 23, 2020) (quotation marks omitted).  Discovery is generally not warranted in the absence of a sufficiently-alleged § 2255 motion.  *See*, *e.g.*, *United States of America v. Besta*, No. 8:20-cr-174, 2023 WL 3226199, at *1 (D. Neb. May 3, 2023).  Movant does not have a meritorious Amended § 2255 Motion, for the reasons explained *supra* in the instant Order.

Further, Movant does not explain (1) what the vaguely-alleged "discovery", "police report", "traffic ticket", "reports", "photographs", and "statements" will show; (2) how such material's contents are materially related to the Amended § 2255 Motion; or (3) how the material's contents are likely to resolve factual disputes that could entitle him to habeas relief.  (*See* ECF No. 19 at PageID 71.)

Movant does not demonstrate good cause for production of Patel's case file or for the Discovery Requests.  The Motion For Case File (ECF No. 19) is **DENIED**.

### B.  <u>Second Motion For Extension</u>

Movant filed (1) the Second Motion For Extension (ECF No. 20) and (2) the Reply (ECF No. 21) one day after the Reply Deadline.  (*See* ECF No. 18.)  In the interest of resolution of this

case, the Court has considered the one-day-untimely Reply in the instant Order.  (*See* Section V.B., *supra*.)  The Second Motion For Extension (ECF No. 20) is **GRANTED**, and the Reply is deemed timely filed.

## III.   THE § 2255 MOTION

On March 19, 2021, Movant filed the Amended § 2255 Motion and alleged the following grounds for relief:

1. Movant argues that Patel rendered ineffective assistance of counsel ("IAC") by "fail[ing] to object to [Movant] being improperly sentenced at [the] sentencing hearing" (ECF No. 11 at PageID 30 ("Sentencing-IAC Claim"));

2. Movant contends that Patel rendered IAC because she "fail[ed] to cross-examine, establish burden of proof beyond hearsay, or present any of the contrary presentation, or challenge any aspect" at the Suppression Hearing (*id*. at PageID 31 ("Suppression-IAC Claim")); and

3. Movant alleges that Patel rendered IAC during the plea process because she "promis[ed] me a lenient an[d] much lesser sentence" if Movant waived his rights under *Rehaif v. United States of America*, 139 S. Ct. 2191 (2019) (*id*. at PageID 32 ("Plea-IAC Claim")).

Movant asks the Court to "set aside or correct [Movant's] sentence."  (*Id.* at PageID 38)

In the Answer, the Government contends that Movant is not entitled to relief because, as to each of the three claims in the Amended § 2255 Motion: (1) he does not allege deficient performance by Patel; and (2) Movant suffered no prejudice from Patel's performance.  (ECF No. 16 at PageID 54 (Government's arguments regarding the Sentencing-IAC Claim); *id*. at PageID 54-56 (Government's arguments regarding the Suppression-IAC Claim); *id*. at PageID 56-61 (Government's arguments regarding the Plea-IAC Claim).

Movant's Reply to the Answer supplements his Suppression-IAC Claim.  (ECF No. 21.) Movant contends that Patel's failure to call witnesses and present evidence at the Suppression Hearing "allow[ed] Detective Parks's and Tate's testimonies into the proceeding totally unimpeached or [un]contradicted."  (*Id*. at PageID 77.)  Movant attaches three photographs

("Attachments") to the Reply, contending they "reveal that there is not any tints [sic] on the front windows." (*Id*.)  Movant argues that the Attachments "prove that not only was Tate's testimony false, but it was also fabricated for the sole purpose of conducting an illegal search and used as a pretext for the [Vehicle] [S]top." (*Id*. at PageID 78.)  Movant asks the Court to set aside his sentence or hold an evidentiary hearing. (*Id*. at PageID 82.)

## IV.   STANDARD OF REVIEW

### A.   Section 2255 Legal Standards

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."  *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).  To establish an error of constitutional magnitude a petitioner "must demonstrate the existence of an error ... which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict."  *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  For a petitioner "to obtain relief under § 2255 on the basis of non-constitutional error, the record must reflect a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  *McWhorter v. United States*, No. 97-6118, 1998 WL 399620, at *1 (6th Cir. June 11,

1998) (citing *Reed v. Farley*, 512 U.S. 339, 348 (1994); *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993) (per curiam)).

A § 2255 motion is not a substitute for a direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 621 (1998).  "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."  *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).  "Defendants must assert their claims in the ordinary course of trial and direct appeal."  *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Grant*, 72 F.3d at 506.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously.  *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).  Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence."  *Bousley*, 523 U.S. at 622.

Where a judge considering a § 2255 motion also presided over the criminal case, as is the case here, the judge may rely on his or her recollection of the prior case.  *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction

and sentencing of the prisoner.  In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion ....").  Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

### B.  Ineffective Assistance Of Counsel

A claim that ineffective assistance of counsel has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a § 2255 proceeding.  *See Pough*, 442 F.3d at 964.  Such a claim is controlled by the standards stated in *Strickland*, 466 U.S. 668.  *Id.* at 966.  To succeed on an IAC claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  A court considering a claim of IAC must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the

outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair [proceeding] whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted); *see Thelen v. United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable") (citation omitted).

A court has license to address the two prongs of the bipartite *Strickland* test in any order, and if a petitioner fails to establish either of the prongs of this test, his claim of ineffective assistance of counsel fails. *Strickland*, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"). In other words, even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Id.* at 691 (citation omitted).

With the above background in mind, the Court will address Patel's specific acts and omissions that the Amended § 2255 Motion challenges.

V.   **ANALYSIS**

   A.   **Sentencing-IAC Claim**

   In support of the Sentencing-IAC Claim, Movant contends that: (1) his conviction under Tennessee law in 2011 "for possession with intent" ("Controlled Substance Possession Conviction") should not have been considered a "controlled substance offense" during sentencing in the Cr. No. 18-cr-20056 (*id*.); and (2) "possession of [a] firearm while aiding and abetting" ("Firearm Possession Enhancement") is "not a predicate [offense] that should have been used to enhance [Movant's] [sentence]." (ECF No. 11 at PageID 30.)

   1.   **Patel's Performance During Sentencing Was Not Deficient**

   Movant's factual premises for the Sentencing-IAC Claim are inaccurate.

   First, the (1) PSR Objections and (2) transcripts of the November 7 Hearing and November 13 Hearing demonstrate that Patel *did* object to use of Movant's Controlled Substance Possession Conviction as a controlled substance offense. In the PSR Objections, Patel specifically argued that Movant's Controlled Substance Possession Conviction was not a controlled substance offense:

> As the Guidelines' definition of "controlled substance offense" does not include attempt crimes, pursuant to the holding in *United States v. Havis*, No. 17-5772, 927 F.3d 382 (June 6, 2019) because the least culpable conduct covered by T.C.A. § 39-17-417 is attempted delivery of a controlled substance, defendant does not have prior felony convictions of either a crime of violence or a controlled substance offense that may be used as a basis for increasing his offense level. No enhancement should apply.

(Cr. No. 18-cr-20056, ECF No. 151 at PageID 535-36.) At the November 13 Hearing, Patel objected to use of the Controlled Substance Possession Conviction as a controlled substance offense to enhance Movant's base offense level:

> PATEL: Your Honor, this concerns the conviction in paragraph 34 -- or 35 that upon -- I understand that the probation's position is that the waiver by information that Mr. Shelton entered regarding that felony says with intent to sell, however, the judgment sheets and all supporting documents do not indicate the specific code section and indicate only the entire statute without any designation as to the

14

subsection.  And it's our position that that would not count under the Havis decision as well.

*****

COURT:  … The defendant allegedly committed the offense of unlawful possession with intent to sell and then the judgment for I believe it's the information and the offense of conviction is unlawful possession with the intent.  This is DITW, cocaine, three years.  I'll pass it forward to both sides and make sure both sides get a look at the documents, and I'll hear further.

*****

CROW[2]:  Your Honor, my argument stays the same.  Only thing I would add is I think the Shepherd documents make it clear that it is with intent to sell, but even if the Court says, well, the defense may be right, that it could mean manufacture or distribution, it doesn't matter.  Possession with intent generally I think is a controlled substance offense, and *Havis* does not change that.

PATEL:  I would stand that all indications from the criminal history show no specific section that it is just manufacture, deliver, sale without any specific indication as to a code section.

COURT:  I understand your argument, but I'm going to deny that objection.  I think it is clear that it's unlawful possession of a controlled substance with intent to sell.  That's what the charging document shows, and I think that's what the judgment shows.  So the objection as far as paragraph 35 is concerned will be overruled and denied.

(Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 737-38 & 744-46.)   The record contradicts Movant's contention that Patel "fail[ed] to object" during sentencing to use of Movant's Controlled Substance Possession Conviction as a controlled substance offense.  (ECF No. 11 at PageID 30.)

Second, the (1) PSR Objections and (2) transcripts of the November 7 Hearing and November 13 Hearing demonstrate that Patel not only raised three objections to the Firearm Possession Enhancement but also was successful in challenging some of the Government's proposed enhancements.  Specifically, Patel raised three objections to the Firearm Possession

---

[2]  J. William Crow, Assistant United States Attorney, represented the Government at the November 7 Hearing and November 13 Hearing.  (ECF No. 180-1 at PageID 704; ECF No. 180-2 at PageID 718.)

Enhancement in the PSR Objections and at the November 13 Hearing: (1) an objection to enhancement based on aiding and abetting another felony (Cr. No. 18-cr-20056, ECF No. 151 at PageID 536; Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 733-36); (2) an objection to enhancement based on the gun count and stolen firearm (Cr. No. 18-cr-20056, ECF No. 151 at PageID 536; Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 740-44); and (3) an objection to Movant's criminal history score (Cr. No. 18-cr-20056, ECF No. 151 at PageID 536; Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 746-50).  The Government argued that Movant should receive an enhancement under USSG § 2K2.1(b)(6)(B) for: (1) possessing a gun in connection with two separate felonies; (2) aiding and abetting Fox in obtaining the gun for Movant illegally; and (3) possessing a gun in connection with drug trafficking.  (Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 730-31.)  Patel argued that Movant did not possess a gun in connection with any of the felonies.  (*See id*.)  The Court adopted Patel's argument that Movant did not possess a gun in connection with drug trafficking.  (*Id*. at PageID 733-36.)  The Court also agreed with Patel that Movant should be attributed to have possessed two guns,  not three, and that he should not receive a stolen weapon enhancement.  (*Id*. at PageID 740-44.)

For these reasons, Movant has not demonstrated that Patel's performance during sentencing was ineffective.  *See Strickland*, 466 U.S. at 687.

### 2. <u>Movant Did Not Suffer Prejudice From Patel's Performance During Sentencing</u>

Movant's failure to demonstrate prejudice from Patel's performance during sentencing, as explained below, underscores the Sentencing-IAC Claim's lack of merit.

As the PSR noted, the criminal information for Movant's 2011 Controlled Substance Possession Conviction indicated that he unlawfully and knowingly possessed cocaine with intent to sell.  (*See* Cr. No. 18-cr-20056, ECF No. 154-1 at PageID 574; Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 744-46.)  A conviction for possessing a controlled substance with intent to sell is

a controlled substance offense under the USSG.  *See United States v. Garth*, 965 F.3d 493, 496 (6th Cir. 2020) (citing USSG § 4B1.1); *United States v. Graham*, 824 F. App'x 332, 336 (6th Cir. 2020).   Under the USSG, Movant's 2011 Controlled Substance Possession Conviction is a controlled substance offense.   The PSR argued, and the Court correctly determined, that the enhancements applied.   Movant's Amended § 2255 Motion offers no argument that the enhancements did not apply.   (*See* ECF No. 11 at PageID 30.)   Movant instead offers only statements that are unsupported in the record.

Specifically, Movant claims: (1) that two guns should not have been attributed to him at sentencing (*id*. (arguing that he "should not have been enhanced for [possessing] one [firearm]"); (2) that he did not possess a high-capacity magazine (*id*.); and (3) that his "criminal history score [is] improper."  (*Id*.)  Movant's vague generalization about "improp[rieties]" in his criminal history record (ECF No. 11 at PageID 30) does not meet the requirement of Rule 2(b)[3] of the § 2255 Rules. Patel objected to the gun count, the enhancement for aiding and abetting another felony, and the stolen firearm enhancement.  (*See* Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 733-36 & 740-44.)  The record contradicts Movant's contentions about the number of firearms attributed to him and his possession of a high-capacity magazine because he pleaded guilty to possessing two guns as a convicted felon and to possessing a Spikes Tactical multi-caliber pistol, which is a semi-automatic pistol with two extended magazines. (*See* Cr. No. 18-cr-20056, ECF No. 2 at PageID 4 (Indictment); *see id.*, ECF No. 134 at PageID 484 (Plea Agreement); *see also* ECF No. 154 (PSR) at PageID 553).

---

[3]   "The motion [to vacate, set aside, or correct the sentence] must … state the facts supporting each ground."  § 2255 Rules, Rule 2(b)(2); *see also Mayle v. Felix*, 545 U.S. 644, 655 (2005) (ruling that the pleading standard under Habeas Corpus Rule 2 "is more demanding" than Fed. Civ. P. 8(a), and citing, *inter alia*, the Advisory Committee's Note providing that "'notice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error")

Given Movant's factually inaccurate contentions, Movant has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694.   The Amended § 2255 Motion does not demonstrate that Patel made "errors so serious [during sentencing] as to deprive [Movant] of a fair [proceeding] whose result is reliable." *See Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).   Movant has not demonstrated that he suffered prejudice from Patel's performance during sentencing. *See Strickland*, 466 U.S. at 687.

Movant has established neither deficient performance nor prejudice as to Patel's representation of Movant during sentencing. *See Strickland*, 466 U.S. at 697, 104 S. Ct. 2052.   As such, the Sentencing-IAC Claim is without merit.

**B.**     **Suppression-IAC Claim**

In the Amended § 2255 Motion, Movant claims that Patel rendered IAC at the Suppression Hearing because she failed: (1) to present evidence that "showed the [Vehicle's] front windows w[ere] not tinted" (referred to as "Front Window Evidence"); and (2) to "subpoena the body cam[era] [footage], the truck cam[era] [footage] or traffic camera [footage] that would have showed the [T]raffic [S]top was illegal" (referred to collectively as "Footage").   (ECF No. 11 at PageID 31.)   In Movant's Reply, he challenges Patel's failure to "call any witnesses [or] present any evidence that was available, thus allowing Detective Parks's and Tate's testimonies into the proceeding totally unimpeached or [un]contradicted."   (ECF No. 21 at PageID 77.)   Movant contends the Attachments to the Reply "reveal that there is not any tints [sic] on the front windows."   (*Id.*)

1.   **Movant Did Not Suffer Prejudice From Patel's Performance During The Suppression Hearing**

Movant's arguments in support of the Suppression-IAC Claim are factually flawed.

First, no Footage from the Traffic Stop was available for Patel to introduce at the Suppression Hearing because none existed.  (*See* Cr. No. 18-cr-20056, ECF No. 126 at PageID 469 (Tate testified that, per agency policy, officers were not required to wear body cameras or use dash cameras).)  Patel's performance did not prejudice Movant because Movant's purported Footage was nonexistent.

Second, Patel's failure to present Front Window Evidence was not determinative of the Traffic Stop's constitutionality.  As the Sixth Circuit ruled on appeal, Tate's testimony about the Vehicle's window tint "suffice[d] for reasonable-suspicion purposes", *see Shelton*, 817 F. App'x at 218.  Front Window Evidence was not dispositive of the lawfulness of officers' stop and search of the Vehicle.  Patel's failure to introduce Front Window Evidence, assuming it existed, did not prejudice Movant.  Tate's suspicions were verified because the tint did not comply with the legal limit.  (*See* Cr. No. 18-cr-20056, ECF No. 126 at PageID 464-65.)

The Attachments to Movant's Reply do not alter this conclusion.

As an initial matter, Movant's affidavit does say whether the automobile shown in the Attachments is, in fact, the Vehicle that Tate and Parks searched during the Traffic Stop.  (*See* ECF No. 22 ("Movant's Affidavit") at PageID 76-84.)  The Court cannot speculate about: the ownership of the automobile shown in the Attachments; the date(s) the Attachments were photographed; or where, when, and by whom the photographs were captured.  Movant's Affidavit provides no such information to authenticate the Attachments.

Second, the Suppression-IAC Claim argues that Patel "failed to present [evidence] show[ing] the front windows w[ere] not tinted" (ECF No. 11 at PageID 31), and Movant's Affidavit contends the Attachments "reveal that there is not any tints on the front windows" (*id*. at PageID 77), but the Attachments contain images only of the passenger-side, driver-side, and rear-view windows of a white vehicle.  (*Id*. at PageID 85-87.)  In other words, the Attachments do not

demonstrate the tinted / non-tinted condition of the front windows of *any* automobile.  On this point, the shading and inferior lighting on the automobile's back window in Exhibit 2 of the Attachments prohibit any reasonably reliable evaluation of whether the front windows are or are not tinted.  (*See* ECF No. 21 at PageID 86.)  Movant has offered no photographic or video evidence of the Vehicle's windows that disproves Parks's and Tate's testimony that the Vehicle's windows were illegally tinted.  Movant fails to meet his burden, *see Strickland*, 466 U.S. at 694, of showing that Patel's performance at the Suppression Hearing prejudiced him.

### 2.  Patel's Performance During Sentencing Was Not Deficient

Movant's failure to demonstrate deficiency in Patel's performance during the Suppression Hearing, as explained below, underscores the Suppression-IAC Claim's lack of merit.

Movant is incorrect in his contention that Patel failed "to object" to admission of the Traffic Stop Evidence (*see* ECF No. 11 at PageID 31).  Patel opposed introduction of the Traffic Stop Evidence in the following ways:

(1)  Patel filed the Motion To Suppress, arguing  that the Government had produced no photographs during discovery that showed the Vehicle's window tint was below the legal limit. (*See* Cr. No. 18-cr-20056, ECF No. 98 at PageID 390-945; *see also* Cr. No. 18-cr-20056, ECF No. 126 at PageID 464-65.)  That Patel did not cross-examine Parks and Tate at the Suppression Hearing is not *per se* defective performance.  "Whether, and to what extent, a witness should be cross-examined is 'virtually unchallengeable' if the decision is made after considering the relevant law and facts."  *Clements v. United States*, No. 16-3063, 2017 WL 3185180, at *2 (6th Cir. Mar. 20, 2017) (ruling that a movant's IAC claim that "counsel did not properly cross-examine witnesses and failed to call witnesses and present favorable evidence" did "not overcome the presumption that counsel's strategic decisions were reasonable") (citing *Strickland*, 466 U.S. at 690, and *Moss v. Hofbauer*, 286 F.3d 851, 864-65 (6th Cir. 2002)).  Rather than cross-examine

20

Parks and Tate at the Suppression Hearing, Patel chose to argue that the Government did not provide any "objective evidence of the officers' observations about the tint of the windows." (*See* Cr. No. 18-cr-20056, ECF No. 126 at PageID 471-74.) "The decision to call a witness is a 'classic question[] of … strategy that merits *Strickland* deference." *Rayborn v. United States of America*, 489 F. App'x 871, 878 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 690). Under that principle, the inverse is equally true. Decisions not to call a particular witness "are all part of counsel's … strategy and tactics, to which this Court is required to give significant deference." *See Barnes v. United States of America*, No. 3:16-cv-443, 2019 WL 3503987, at *4 (E.D. Tenn. Aug. 1, 2019) (citing *Bentley v. Motley*, 248 Fed App'x 713, 718 (6th Cir. 2007) (finding counsel was not ineffective for asking only one question on cross-examination of a witness where petitioner failed to establish that the strategy was "objectively unreasonable, or outside the realm of reasonable professional judgments)). "[C]ounsel has wide latitude in deciding how best to represent a client, and we must give deference to counsel's tactical decisions" *see Yarborough v. Gentry*, 540 U.S. 1, 5-6, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003), and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *See Strickland*, 466 U.S. at 689. Such "[s]trategic decisions made after a thorough investigation of the relevant law and facts are 'virtually unchallengeable.'" *See Rayborn*, 489 F. App'x at 878 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 690).

The record demonstrates that Patel made such reasoned strategic decisions in preparing the Motion To Suppress. For example, she consulted with counsel for a co-defendant to assess the strengths and weaknesses in Movant's position about suppression of the Traffic Stop Evidence. (ECF No. 16-1 at PageID 63.) This Court cannot second-guess such tactical decisions, especially because Patel "may have been privy to information of which we are unaware", *see Strickland*, 466 U.S. at 689. (*See also* ECF No. 16-1 at PageID 63 (attesting that, after a strategic meeting with

counsel for co-defendant, Patel determined that the two defendants were "in a different procedural posture").)

(2)  Patel filed objections to the R&R.  (*See* Cr. No. 18-cr-20056, ECF No. 121 at PageID 444-45.)  The record does not support Movant's claim that Patel failed to object to introduction of the Traffic Stop Evidence.

(3)  Patel appealed the denial of the Motion To Suppress, arguing that the Government had to produce more than just Tate's testimony to justify the Traffic Stop.  *See Shelton*, 817 F. App'x at 218.  That Patel was unsuccessful does not *per se* mean her performance was defective.

On this record, Movant has not shown that Patel's performance regarding suppression of the Traffic Stop Evidence was defective.

Movant has demonstrated neither prejudice nor deficient performance as to Patel's performance regarding suppression of the Traffic Stop Evidence.  *See Strickland*, 466 U.S. at 697, 104 S. Ct. 2052.  Therefore, the Suppression-IAC Claim lacks merit.

### C.   Plea-IAC Claim

Movant claims that Patel rendered IAC during the plea stage because she: (1) sent him a letter that his guideline range was thirty to thirty-seven months, with a maximum sentence of fifty-seven months (ECF No. 11 at PageID 33); and (2) promised he would receive a "much lesser sentence" if he were to (a) waive his rights under *Rehaif*, 139 S. Ct. 2191, and (b) plead guilty. (*Id*. at PageID 32-33.)

"[A] defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement."  *United States of America v. Brown*, No. 22-3671, 2023 WL 4564766, at *1 (6th Cir. July 17, 2023) (internal citations and quotation marks omitted).  "Federal Rule of Criminal Procedure 11 ensures that the district court is satisfied with the knowing, voluntary, and intelligent nature of the defendant's plea.  This requires verification of the defendant's

understanding of the consequences of his plea, including a waiver of … rights." *Id*. (internal citation and quotation marks omitted). The enforceability of a defendant's waiver of rights "stands or falls with the validity of the agreement[.] [A court] must consider whether the plea agreement as a whole was knowing and voluntary." *Id*. (internal citations omitted). *See also Gilbert v. United States*, 64 4th 763, 779 (6th Cir. 2023) (citing *United States v. Coker*, 514 F.3d 562, 573 (6th Cir. 2008) (noting that this court has "repeatedly enforced plea agreements waiving specific appellate rights" "so long as the waiver is knowing and voluntary"); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant'") (internal citations omitted).

A decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside "the range of competence demanded of attorneys in criminal cases." *Byars v. Gidley*, No. 16-2485, 2017 WL 4956919, at *2 (6th Cir. July 3, 2017) (citing *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970))). Determination of the knowing and voluntary nature of a waiver within a plea agreement is made "by examining the district court record, particularly the written plea agreement and the colloquy at the change of plea hearing." *United States of America v. Glowacki*, No. 22-3279, 2023 WL 179887, at *7 (6th Cir. Jan. 13, 2023) (internal citation and quotation marks omitted). "The two-part test for ineffective assistance of counsel governs this determination." *Byars*, 2017 WL 4956919, at *2. To establish constitutionally ineffective assistance in the plea-bargaining process, a movant must show not only that counsel was deficient, but that the outcome of the plea process would have been different with competent advice. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Missouri v. Frye*, 566 U.S. 133, 140–41 (2012); *Hill*,

474 U.S. at 57 (the Sixth Amendment right to effective counsel extends to the plea-bargaining process and is governed by the two-prong *Strickland* test).

To demonstrate ineffective assistance, a movant must show that counsel's performance during the plea process was deficient.  The Supreme Court cases on counsel's deficient performance during plea discussions generally fall into two categories: (1) counsel failed to communicate a favorable plea offer to the defendant before the time to accept the offer had expired, *see, e.g., Missouri v. Frye*, 566 U.S. 133, 140–41 (2012) (counsel's failure to communicate a formal offer from the prosecution to accept a plea on terms and conditions that may be favorable to the accused constitutes deficient performance); or (2) counsel gave materially inaccurate sentencing information or advice to defendant who, based on that advice, rejected the offer and proceeded to trial, *see, e.g., Hill* (counsel's failure to accurately inform the defendant of the amount of time he would have to spend in prison before he became eligible for parole constituted deficient performance).  The Sixth Circuit has relied on the plea-colloquy advisement of rights to preclude later claims that counsel's advice was misleading:

> When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea. The court's proper advisement of rights is thus deemed to "foreclose" any showing of actual prejudice attributed to counsel's erroneous advice, because the defendant is deemed bound by his statements in response to the court's inquiry.  Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood.

*United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) (citations omitted); *Thompson v. United States*, 728 F. App'x 527, 535 (6th Cir. 2018).

To establish prejudice, the movant must show a reasonable probability that, but for his attorney's unreasonable assessment of the likely length of sentence, he would not have entered the plea and would have proceeded to trial.  *Pola*, 703 F. App'x at 423.  "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Padilla*, 559 U.S. at 372 ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"). This assessment requires "examination of the totality of the evidence," whether the defendant had a viable defense, and the respective consequences of a conviction after trial and by plea. *Pola*, 703 F. App'x at 423.

As relevant to Movant's Plea-IAC Claim, 18 U.S.C. § 922(g) makes it "unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition[.]" 18 U.S.C. § 922(g). In *Rehaif*, 139 S. Ct. 2191, the Supreme Court held that, to prove a § 922(g) violation, "the Government must prove both [1] that the defendant knew he possessed a firearm and [2] that he knew he belonged to the relevant category of persons barred from possessing a firearm" ["Knowledge-Of-Status Element"]).[4] *Rehaif*, 139 S. Ct. at 2194.

The holding in *Rehaif* has implications for the plea process. A guilty plea is not voluntary and knowing if "the defendant [does not] understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley*, 523 U.S. at 618-19). Therefore, post-*Rehaif*, a defendant who pleads guilty to being a felon in possession of a firearm must be advised by the District Court during the plea colloquy of the knowledge-of-status element. *See Greer v. United States*, 141 S. Ct. 2090, 2096-97 (2021) ("*Rehaif* error[ ] occurred" when "the District Court failed to advise [the defendant]

---

[4] "*Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of this provision of the United States Code." *Matthews v. United States*, No. 19-2091, 2020 WL 2614619, at *2 (6th Cir. Jan. 6, 2020), quoting *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019).

during the plea colloquy that, if he went to trial, a jury would have to find that he knew he was a felon").

Applying these principles here, Movant demonstrates neither prejudice from Patel's performance during the plea process nor her defective performance in the first instance.

### 1. Patel's Performance During The Plea Process Was Not Deficient Because Movant's Agreement To The Plea Bargain Was Knowing And Voluntary

Over nine (9) months before the November 7 Hearing, Patel gave Movant a written sentencing calculation estimate on January 30, 2019, showing a range of one hundred twenty to one hundred and fifty months. (ECF No. 16-1 at PageID 62; ECF No. 16-2 at PageID 65-66 ("Sentencing Estimate").) Patel advised Movant that "there was no factually supported legal defense." (ECF No. 16-1 at PageID 62.)

Movant asked Patel to file the Motion To Suppress the Traffic Stop Evidence, which Patel filed on February 8, 2019. (*See* Cr. No. 18-cr-20056, ECF No. 98; *see also* ECF No. 16-1 at PageID 63.)

After Movant's Motion To Suppress was denied on April 1, 2019 (Cr. No. 18-cr-20056, ECF No. 119) and Patel filed objections to the R&R on April 16, 2019 (*see* Cr. No. 18-cr-20056, ECF No. 121), Movant decided to change his plea and enter into the Plea Agreement with the Government. (*See* Cr. No. 18-cr-20056, ECF No. 134.) Patel negotiated for Movant's reservation of his right to appeal the denial of the Motion To Suppress, as part of the guilty plea. (*See* Cr. No. 18-cr-20056, ECF No. 134 at PageID 487.)

On May 21, 2019, Patel reviewed the evidence, draft plea agreement, Movant's criminal history, and the USSG with him. (*Id*. at PageID 63.) Although Movant's final sentencing exposure was calculated at 100 – 120 months, Patel advised Movant that the sentencing guideline range would start at one hundred twenty to one hundred and fifty months. (*Id*.)

**At the** Plea Change Hearing on May 29, 2019, Movant stated that he was entering his Changed Plea freely and voluntarily.  (*See* Cr. No. 18-cr-20056, ECF No. 180 at PageID 694 & 701.)  Movant responded affirmatively to the Court's questions about his understanding of the terms of the draft plea agreement.  (*See id*. at PageID 681-700.)  Movant stated that his Changed Plea was intelligible to him and was freely made.  (*See id*.)  Movant also testified that he was satisfied with the representation Patel had provided to him during the plea process.  (*See id*. at PageID 694.)  The Court explained to Movant that it did not know what the final sentence would be and that the Court would make that decision at the sentencing hearing after issuance of the PSR. The Court also told Movant that he faced a maximum punishment of ten years, and Movant stated that he understood:

> COURT:  My understanding is that we can proceed with a change of plea at this time.  The parties have passed forward to me a copy of the written plea agreement … Mr. Shelton, is what I said true, you want to go ahead and change your plea from not guilty to guilty and looking like Count 3 of the indictment?
>
> MOVANT:  Yes, sir.
>
> COURT: Okay.  Assuming we get through this today, there won't be a trial in your case.  And what we will do is have a sentencing hearing out about three or four months or so.  At that time I'll take into account everything that's presented to me, and I'll make the final decision about the sentence that's appropriate in your case; do you understand?
>
> MOVANT:  Yes, sir.
>
> COURT:  Lots of questions I need to ask you today.  It won't take too long, but before I ask you those questions, I want you to listen to the prosecutor, Mr. Crow. He's going to go over two things.  First he's going to go over the plea agreement.  I think you have it there.  Please listen to him because I want the terms to be out on the record, no misunderstandings.  Then he's going to give me the facts that support the charge in the indictment.  That's really why we're here today.  Listen to them because I'm going to ask you about the facts, make sure that what he tells me is accurate and true and that you are accepting responsibility and admitting your guilt, okay?
>
> MOVANT:  Yes, sir.

27

COURT:  After that I'm going to go over with you your trial rights, so you are giving up the right to trial, but you have to understand what your trial rights are, and we will talk for a few minutes about what's going to happen at sentencing, okay?

MOVANT:  Yes, sir.

COURT:  Mr. Crow, if you would please summarize for us the terms of the plea agreement.

CROW:  Yes, Your Honor.  The defendant agrees he will enter a voluntary plea of guilty to Count 3 of the indictment which charges the defendant with being a convicted felon in possession of firearms.  The defendant agrees he's entering a voluntary plea of guilty to Count [3] because he is in fact guilty of that offense.

**\*\*\*\***

COURT:  Have you discussed it [the plea agreement] thoroughly with your lawyer?

MOVANT:  Yes, she's explained it, yes, sir.

COURT:  Okay.  Was she able to answer your questions?

MOVANT:  Yes, sir, … I understand it.

**\*\*\*\***

COURT:  So you are satisfied with the plea agreement in this case?

MOVANT:  Yes, sir.

**\*\*\*\***

COURT:  I'm assuming you signed this after you read it and discussed it with her [Patel] and really you came to understand the plea agreement; is that true?

MOVANT:  Yes, sir.  Yes, sir.

**\*\*\*\***

COURT:  So as far as possessing these two firearms, you are admitting your guilt –

MOVANT:  Yes, sir.

COURT:  -- and accepting responsibility?

28

MOVANT:  Yes, sir.

****

COURT:  Now let's go over the range of punishment.  Now I don't know what your final sentence is going to be, I'll make that decision at your sentencing hearing, but you just need to be aware of this.  Now punishment for this is not more than 10 years confinement with the Bureau of Prisons, not more than a $250,000 fine or both and up to three years of supervised release.  And this is a felony that you are pleading guilty to so there is a $100 special assessment; do you understand?

MOVANT:  Yes, sir.

COURT:  Now I don't know how bad your criminal history is, but if you have three prior convictions for violent felonies or serious drug offenses, then that bumps the punishment up.  It would be not less than 15 years and up to life imprisonment, up to a $250,000 fine or both and up to five years supervised release and that special assessment; do you understand?

MOVANT:  Yes, sir.

COURT:  No one knows what your final sentence will be.  As I told you, I'll decide that at your sentencing hearing; do you understand?

MOVANT:  Yes, sir.
COURT:  Any questions so far?

MOVANT:  No, sir.

****

COURT:  You are doing this freely and voluntarily?

MOVANT:  Yes, sir.

COURT:  Is anyone forcing you to plead guilty?

MOVANT:  No, sir.

COURT:  Who made the decision to do this today?

MOVANT:  Me, I made the decision, Jonathan Shelton.

****

COURT:  And you have already told me that you've read this agreement, you've discussed it thoroughly with your lawyer, and you understand it, is that true?

MOVANT:  Yes, sir.

> COURT:  Do you have any questions about the plea agreement?
>
> MOVANT:  No, sir.
>
> COURT:  Do you have any questions about anything that I have gone over with you today?
>
> MOVANT: No, sir.
>
> COURT:  Is this what you want to do?
>
> MOVANT:  Yes, sir.

(*See* Cr. No. 18-cr-20056, ECF No. 180 at PageID 673-76, 683-84, 688-95 & 697-700.)

At the November 7 Hearing, Patel stated that: (1) she had discussed the *Rehaif* Waiver at length with Movant; (2) she had explained to him that he had a right to withdraw his plea and proceed to trial; and (3) he agreed to stipulate that he knew, at the time of the Offense Date, he was a convicted felon.  (*See* Cr. No. 18-cr-20056, ECF No. 180-1 at PageID 712-13.)  The Court continued the November 7 Hearing, in order that counsel for the parties could work out a typewritten revised stipulation with a *Rehaif* waiver that Movant "is comfortable with agreeing to." (ECF No. 180-1 at PageID 714.)

Before the November 13 Hearing, Patel told Movant that if he did not agree to the *Rehaif* Waiver: (1) the case would be re-submitted to the grand jury but (2) the delay would not change his substantive legal position because of his video-recorded inculpatory statements.  (ECF No. 16-1 at PageID 63.)

Patel revised the Draft Stipulation and presented it to the Court at the November 13 Hearing.  (*See* Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 721.)  The revised document included Movant's stipulation that:

> At the time of the charged act, [Movant] knew he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year.  [Movant] is aware of *Rehaif v. United States*, 139 S. Ct. 2191 (2019) and that as a result, he has the right to withdraw his plea of guilty in this matter.  Despite this, [Movant] is

30

stipulating that he had knowledge "that he fell within the relevant status", thus satisfying the "knowledge requirement" or fourth element of 18 U.S.C. § 922(g)(1)") [the "*Rehaif* Waiver"].

(*See* Cr. No. 18-cr-20056, ECF No. 163 at PageID 586-87 ("Revised Stipulation").)  During the November 13 Hearing, Patel told the Court that she had discussed the Revised Stipulation "thoroughly with [Movant]."  (*See* Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 721.)

At the November 13 Hearing, Movant told the Court that Movant (1) had discussed the Revised Stipulation and *Rehaif* Waiver with Patel -- including the provision that "[a]t the time of the charged act, [Movant] knew he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year" (referred to as "Knowledge-of-Status Provision") (*see id.* at PageID 724-27), (2) Movant had no problems with it, and (3) it was accurate:

> COURT: As far as the stipulation is concerned, have you read it?
>
> MOVANT:  Yes, sir.
>
> COURT: Have you discussed it with your lawyer?
>
> MOVANT:  Yes, sir.
>
> ****
>
> COURT: I'm just going to read this language into the record.  I just need to double check that you have read this.  You told me you have, you discussed it with your lawyer and that you understand this.  Are we clear?
>
> MOVANT:  Yes, sir.
>
> COURT: Number one here in the stipulation.  At the time of the charged act, the defendant, Jonathan Shelton, that's you, knew he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year.  You've read that, didn't you?
>
> MOVANT:  Yes, sir.
>
> COURT:  And you've discussed that with your lawyer?
>
> MOVANT:     Yes, sir.
>
> COURT:  Do you have any problems with that?

MOVANT:    No, sir.

COURT:  Is it accurate?

MOVANT:  Yes, sir.

COURT:  All right.  And then paragraph 2 here, the defendant is aware of -- and this is the United States Supreme Court case, *Rehaif* I call it versus United States, and as a result you realize you have the right to withdraw your plea of guilty in this matter.  Despite this, Jonathan Shelton is stipulating that he had knowledge that he fell within the relevant status thus satisfying the knowledge requirement, or the fourth element, that's what I was talking to you about, the fourth element in the statute, 922(g)(1).  Do you understand?

MOVANT:  Yes, sir.

COURT:  You have read this?

MOVANT:  Yes, sir.

COURT:  Discussed it with your lawyer?

MOVANT:  Yes, sir.

COURT:  This is how you want to proceed?

MOVANT:  Yes, sir.

COURT:  All right.  Do you have any questions about it at all?

MOVANT:  No, sir.

COURT:  … [T]his is a stipulation of the parties and an agreement, discussed it with the lawyer and he appears to understand.

(*See* Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 724-27.)  In the Revised Stipulation that Movant, Patel, and the Government signed, Movant acknowledged that, on the Offense Date: (1) he knew he had been previously convicted of a crime punishable by a term of imprisonment exceeding one year; and (2) he understood he had a right to withdraw his guilty plea in light of *Rehaif.*  (*See* Cr. No. 18-cr-20056, ECF No. 163 at PageID 586-87; *see also* Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 725-26.)  Patel submitted several objections at the November 13 Hearing

to the sentencing calculations, adjustments, enhancements, and criminal history points.  (*See* Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 737-53.)  After hearing counsel and the probation officer regarding objections to the sentencing calculations, the Court sentenced Movant to one hundred months.  (*Id*. at PageID 765-68.)

The record from the Plea Change Hearing and Sentencing Hearings summarized above demonstrates that Patel's performance during the plea process was not defective because Movant understood of the consequences of entering his Changed Plea and accepting the *Rehaif* Waiver. (*See* Cr. No. 18-cr-20056, ECF No. 180 at PageID 673-76, 683-84, 688-99; Cr. No. 18-cr-20056, ECF No. 180-1 at PageID 710-14; Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 724-27.)  *See also Gilbert*, 64 4th at 779 (citing *Coker*, 514 F.3d at 573); *Glowacki*, 2023 WL 179887, at \*7. Both Patel and the Court told Movant that he could withdraw his Changed Plea and proceed to trial.  Movant expressly told the Court that his agreement to the Revised Stipulation, including its *Rehaif* Waiver, was voluntarily made with full comprehension of its implications.  (*See id*.)  *See also Hill*, 474 U.S. at 56.  At the November 7 Hearing and November 13 Hearing, the Court confirmed with Movant that he had received from Patel explanation of the *Rehaif* Waiver.  During the colloquies at the November 7 Hearing and November 13 Hearing, the Court: advised Movant of the maximum penalties (*see* Cr. No. 18-cr-20056, ECF No. 180-1 at PageID 708-09; Cr. No. 18-cr-20056, ECF No. 180-2 at PageID 753); discussed sentencing enhancements (*see* Cr. No. 18-cr-20056, ECF No. 180 at PageID 697-98; Cr. No. 18-cr-20056, ECF No. 180-1 at PageID 707-08); informed Movant that that no sentence was guaranteed (*see* Cr. No. 18-cr-20056, ECF No. 180 at PageID 690); and told Movant that the ultimate determination of the sentence would be made by the Court (*see id*).

This record contradicts Movant's unsupported contentions that, in a "letter", Patel promised him a sentence of thirty to thirty-seven months, with a maximum sentence of fifty-seven

months (*see* ECF No. 11 at PageID 32-33).  Movant has not produced that alleged letter from counsel.  Patel's Sentencing Estimate, which *is* in the record, flatly contradicts Movant's contention about Patel's sentencing forecast.  (*See* ECF No. 16-2 at PageID 65-66 (estimating a range of one hundred twenty to one hundred and fifty months).)

In the Amended § 2255 Motion, Movant further argues that Patel "verbally told me [that] what I'm looking at [is] no more than 57 months."  (*Id.*)  Movant's allegation is unsupported.  He has not submitted an affidavit that contradicts the written Sentencing Estimate (*see* ECF No. 16-2 at PageID 65-66).

Given that Movant's acceptance of the plea bargain was knowing and voluntary, Movant fails to demonstrate that his Patel was ineffective during the plea process.

## 2. Movant Did Not Suffer Prejudice From Patel's Assistance Regarding Movant's Plea Bargain

Movant's failure to demonstrate IAC by Patel during the plea process is sufficient to deny the Plea-IAC Claim for lack of merit.  *See Strickland*, 466 U.S. at 697.  Movant's failure to demonstrate prejudice from Patel's performance during the plea process, as explained below, underscores the Plea-IAC Claim's lack of merit.

### a. Movant Does Not Claim That He Would Have Proceeded To Trial

Movant does not allege that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *See Hill*, 474 U.S. at 59; *Pola*, 703 F. App'x at 423.  Movant's Plea-IAC Claim is construed to allege that, at most, Movant simply expected a shorter sentence because he pleaded guilty and now is dissatisfied with the term of imprisonment that was imposed.  The Plea-IAC Claim does not allege that Movant would have left in place his Initial Plea and proceeded to trial, but for Patel's advice about the Draft Stipulation, the *Rehaif* Waiver, and the Revised Stipulation.  (*See* ECF No. 11 at PageID 32-33.)

### b.    The Government Could Have Proven The Knowledge-Of-Status Element

Had Movant rejected the *Rehaif* Waiver and proceeded to trial, the Government could have

proven § 922(g)'s Knowledge-Of-Status Element by introducing:

(1) Movant's signed statement of admission ("Signed Statement") (*see* ECF No.
"plea
(2) 16-1 at PageID 62);

(2) his video-recorded inculpatory statements made in custody ("Video
Statements") (*see* Cr. No. 18-cr-20056, ECF No. 154 at PageID 551 (the PSR
summarizes jail calls in which Movant admitted he knew he could not possess a
gun); *see also* ECF No. 16-1 at PageID 62 (after Movant's custodial interview
concluded, Movant was recorded saying to himself "I can't even protect my own
life", in reference to his inability to own a firearm lawfully));

(3) his two prior felony convictions, for which he received sentences in excess of
one year ("Prior Felony Convictions") (*see* Cr. No. 18-cr-20056, ECF No. 154 at
PageID 154 (listing Movant's two prior felony convictions and his conviction for
being a felon in possession of a gun)); and

(4) his prior state court conviction for being a felon in possession of a gun ("Prior
Gun Possession Conviction") (*see* Cr. No. 18-cr-20056, ECF No. 154 at PageID
560).

Movant's Prior Felony Convictions would have been substantial evidence that he knew he

was a felon on the Offense Date:

In a felon-in-possession case where the defendant was in fact a felon when he
possessed firearms, the defendant faces an uphill climb in trying to satisfy the
substantial-rights prong of the plain-error test based on an argument that he did not
know he was a felon. The reason is simple: If a person is a felon, he ordinarily
knows he is a felon. Felony status is simply not the kind of thing that one forgets.
That simple truth is not lost upon juries. Thus, absent a reason to conclude
otherwise, a jury will usually find that a defendant *knew* he was a felon based on
the fact that he *was* a felon. A defendant considering whether to plead guilty would
recognize as much and would likely factor that reality into the decision to plead
guilty. In short, if a defendant was in fact a felon, it will be difficult for him to
carry the burden on plain-error review of showing a 'reasonable probability' that,
but for the *Rehaif* error, the outcome of the district court proceedings would have
been different.

*See Greer*, 141 S. Ct. at 2097 (internal citation and quotation marks omitted) (emphasis in

original).  Movant's Prior Gun Possession Conviction would have "proved beyond a reasonable

doubt that [Shelton] had the knowledge required by *Rehaif*.'"  *See United States v. Conley*, 802 F. App'x 919, 924 (6th Cir. Feb. 5, 2020) (internal citation and internal quotation marks omitted).

Movant's Signed Statement, Video Statements, Prior Felony Convictions, and Prior Gun Possession Conviction would have enabled the Government to prove at trial under *Rehaif* that Movant violated 18 U.S.C. § 922(g) by knowing, as of the Offense Date not only (1) that he possessed a firearm but also (2) that he belonged to the relevant category of persons barred from possessing a firearm.  The "totality of th[is] evidence", and the fact that Movant did not "ha[ve] a viable defense", *see Pola*, 703 F. App'x at 423, render him unable to "convince the [C]ourt that a decision to reject the plea bargain would have been rational under the circumstances."  *See Padilla*, 559 U.S. at 372.  In the Amended § 2255 Motion, Movant does not deny his guilt under § 922(g) or allege a viable defense.

### c.      The Plea Bargain Benefitted Movant

Pursuant to U.S.S.G. § 3E1.1(a), a defendant who accepts responsibility for his offense is entitled to a decrease in the offense level by two levels.  Movant's acceptance of responsibility in the plea agreement reduced his sentencing guideline range to 100 – 125 months.  *See* Sentencing Table, U.S.S.G. Ch. 5, Pt. A.  (*See also* Cr. No. 18-cr-20056, ECF Nos. 154 at PageID 568; and 180-2 at PageID 753 & 765.)  Given his criminal background and the resulting 100 – 120 month sentencing range that Movant faced, his allegation about a promise by Patel of "no more than 57 months (ECF No. 11 at PageID 33) is not credible.  (*See* ECF No. 16-2 at PageID 65-66 (Patel's Sentencing Estimate).)  Movant has not demonstrated that there was a reasonable probability that he would have gone to trial.  (*see* ECF No. 11 at PageID 33).  Movant has not demonstrated that he suffered prejudice from Patel's assistance during the plea process.

In sum, based on the totality of the evidence against Movant and his lack of defense, Movant does not demonstrate in the Amended § 2255 Motion or the Reply that he was prejudiced

by Patel's assistance during the plea process. Quite the contrary, Patel provided Movant with excellent representation throughout the entirety of the cause. As stated by the Court at the November 13 Hearing, Movant had a full understanding of the charges against him and his sentencing exposure. The proper, clear, and thorough plea colloquies cured any misunderstanding that Movant may have had about the consequences of his plea bargain. *See Pola*, 703 F. App'x at 423; *Thompson*, 728 F. App'x at 535–36 (6th Cir. 2018) (finding no prejudice where the defendant "understood the potential penalties for the charged offenses; he had discussed the sentencing guidelines with [defense counsel]; and [understood] that the sentence ultimately imposed by the district court may be different from any estimate given to him by [defense counsel]").

Movant has established neither deficient performance nor prejudice as to Patel's assistance during the plea process. *See Strickland*, 466 U.S. at 697, 104 S. Ct. 2052. As such, the Plea-IAC Claim lacks merit.

For all of the reasons explained above, Movant fails to satisfy his burden of establishing that his conviction and sentence were in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. The Amended § 2255 Motion's claims are without merit. For these reasons, the Amended § 2255 Motion (ECF No. 11) is **DENIED**. Judgment shall be entered for the Government.

## VI.   <u>APPEAL ISSUES</u>

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). No § 2255 movant may appeal without this certificate.

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

> Where a district court has rejected a constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.... When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling ....

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).  "To put it simply, a claim does not merit a certificate unless *every independent reason to deny the claim is reasonably debatable.*" *Id.*; *see also id.* ("Again, a certificate is improper if *any* outcome-determinative issue is not reasonably debatable.").

There can be no question that the issues raised in Movant's § 2255 Motion are meritless for the reasons previously stated.  Because any appeal by Movant on the issues raised does not deserve attention, the Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade*, 117 F.3d at 952.  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in

the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in good faith.  It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is **DENIED**.[5]

**IT IS SO ORDERED**, this 13th day of October, 2023.

 /s/ John T. Fowlkes, Jr.
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE

---

[5]  If Movant files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this Order.  *See* Fed. R. App. P. 24(a)(5).